UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

BERNARDINE BERINI,            )
                              )
          Plaintiff,          )
                              )
     vs.                      )     No. 4:04-CV-1379 CEJ
                              )
FEDERAL RESERVE BANK OF       )
ST. LOUIS, EIGHTH DISTRICT,   )
                              )
          Defendant.          )

## MEMORANDUM AND ORDER

This matter is before the Court on defendant's motion to dismiss Count II of plaintiff's complaint. Plaintiff has filed a memorandum in opposition to this motion, and the issues are fully briefed.

**I. Background**

Plaintiff brings this action against her former employer, Federal Reserve Bank of St. Louis, asserting claims relating to her retirement. In the amended complaint, plaintiff asserts claims under the Age Discrimination in Employment Act (Count I)[1] and § 510 of the Employee Retirement Income Security Act (Count II) [2] Defendant moves under Fed. R. Civ. P. 12(b)(1) to dismiss Count II for lack of subject matter jurisdiction.

Plaintiff was employed at the Federal Reserve Bank of St. Louis from June 2, 1969 until April 1, 2004. At the time her employment ended, she was a Specialist in the Expense Oversight

---

[1] 29 U.S.C. § 621, *et seq*.

[2] 29 U.S.C. § 1000, *et seq*.

Unit of the Financial Management Department.  Defendant is the Reserve Bank for the Eighth Federal Reserve District with its principal place of business in St. Louis, Missouri.  The defendant also supervises branch banks in Little Rock, Arkansas; Louisville, Kentucky; and Memphis, Tennessee.

ERISA was enacted to protect participants in employee benefit plans "by requiring the disclosure and reporting to participants and beneficiaries of financial and other information with respect thereto, by establishing standards of conduct, responsibility, and obligation for fiduciaries of employee benefit plans, and by providing for appropriate remedies, sanctions, and ready access to the Federal courts."  29 U.S.C. § 1001.  Title I of ERISA, § 510 states that:

> It shall be unlawful for any person to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan, this subchapter, section 1201 of this title ... or for the purpose of interfering with the attainment of any right to which the participant may become entitled under the plan....

29 U.S.C. § 1140.  Plaintiff claims a violation of § 510, alleging that defendant discriminated against her for the purpose of interfering with her rights as an employee benefit plan participant.

The provisions of Title I of ERISA, including § 510, do not apply to government plans.  29 U.S.C. § 1003(b)(1).  A government plan is defined as: "a plan established or maintained for its employees by the Government of the United States, by the government

of any State or political subdivision thereof, or by any agency or instrumentality of any of the foregoing."  29 U.S.C. § 1002(32).

The defendant moves for dismissal of Count II, arguing that it is an instrumentality of the federal government and, therefore, its employee benefit plan is not subject to the provisions of § 510 of Title I of ERISA.  Plaintiff counters that the federal reserve bank is not a federal instrumentality for purposes of ERISA, and thus is not exempt under the "governmental plan" language.

**II. Discussion**

The specific question of whether the employee benefit plans maintained by the Federal Reserve System are government plans for the purposes of Title I of ERISA is one of first impression. Because a government plan is one maintained by an agency or instrumentality, any analysis must focus on those terms, which are not defined by ERISA.

The Supreme Court has defined, generally, what might constitute an instrumentality: "A typical government instrumentality . . . is created by an enabling statute that prescribes the powers and duties of the instrumentality, and specifies that it is to be managed by a board selected by the government in a manner consistent with the enabling law." First National City Bank v. Banco Para El Comercio Exterior de Cuba, 462 U.S. 611, 624 (1983). The Court also distinguished between instrumentalities and agencies: "These distinctive features permit government instrumentalities to manage their operations on an enterprise basis while granting them a greater degree of

flexibility and independence from close political control than is generally enjoyed by government agencies." Id. at 624-25. Defendant argues that although it is not an agency, it is an instrumentality of the federal government and thus exempt from Title I of ERISA.

The Federal Reserve Act established the federal reserve banks as part of the Federal Reserve System in 1913. 12 U.S.C. § 221 *et seq*. The preamble to the Federal Reserve Act states that its purpose is to "provide for the establishment of Federal Reserve Banks, to furnish an elastic currency, to afford means of rediscounting commercial paper to establish a more effective supervision of banking in the United States, and for other purposes." Federal Reserve Act, Ch. 6, 38 Stat. 251, (1913). The system consists of twelve federal reserve banks and a Board of Governors. Members of the Board are appointed by the President with the advice and consent of the Senate. 12 U.S.C. § 241. The Board oversees the federal reserve banks and has additional enumerated powers to control the operations of the banks. See 12 U.S.C. § 248.

Each federal reserve bank is managed by a nine-member board of directors, three of whom are appointed by the Board of Governors. 12 U.S.C. § 302. National banks are required to become members of the Federal Reserve System by "subscribing and paying for stock in the Federal Reserve bank of its district." 12 U.S.C. § 222. By statute, members receive only a six percent dividend annually on their stock. 12 U.S.C. § 289(a)(1)(A).

Because the federal reserve banks are individually managed by separate boards of directors and their stock is privately held, it might be argued that the banks are privately owned. As one court has explained, however,

> Because of this low statutory dividend and, more importantly, because banks which are members of the Federal Reserve System are required to subscribe to the stock of the Federal Reserve Bank in whose district they are located, it appears that the stock of Federal Reserve Banks, unlike stock in a private corporation, is not acquired for investment purposes. Further, because member banks are required to subscribe and because the Board has ultimate control over the operations of each Federal Reserve Bank, stock in Federal Reserve Banks, unlike stock in a private corporation, is seemingly not acquired for purposes of control. Rather, such stock is acquired because its "ownership" is "a condition of membership in the Federal Reserve System."

Lee Const. Co., Inc. v. Federal Reserve Bank of Richmond, 558 F. Supp. 165, 177 n.17 (D. Md. 1982), citing 4 F. Solomon, W. Schlicting, T. Rice & J. Cooper, Banking Law § 77.02, at 77-6 to 77-7 (1982).

The federal reserve banks appear to conform to the general description of instrumentalities as stated in First National City Bank. They were established directly by Congressional legislation for the public purpose of increased control of the nation's currency and banking system. Although they are independently owned corporations, they exist only by virtue of the enabling statute and possess only the powers granted by the legislation. The banks are supervised by an entity that bears the hallmarks of an agency, in that the Board is subject to more direct political control via the Presidential appointment of its members.

In several cases, courts have discussed whether federal reserve banks are instrumentalities of the federal government. In Federal Reserve Bank of St. Louis v. Metrocentre Improvement District, the Eighth Circuit held that federal reserve banks were federal instrumentalities. 657 F.3d 183, 186 (8th Cir. 1981) (also noting consistency of this holding with other circuits). As a result, the federal reserve bank was not subject to special assessments by state and local governments.

Likewise, although only in dicta, the First Circuit stated that federal reserve banks were "plainly" instrumentalities. Federal Reserve Bank of Boston v. Comm'r of Corporations and Taxation, 499 F.2d 60, 62 (1st Cir. 1974). The court held that for the purposes of distinguishing the federal reserve banks from federal savings and loans, which could not on their own obtain a federal court declaration against state taxes, the "reserve banks, by contrast, are plainly and predominantly fiscal arms of the federal government." Id.

The Ninth Circuit found that an employee of a federal reserve bank was a government official for the purposes of a criminal statute forbidding bribery of "any federal government employee or any person 'acting for or on behalf of the United States, or any department, agency, or branch of Government thereof [].'" U.S. v. Hollingshead, 672 F.2d 751, 753 (9th Cir. 1982). In discussing the governmental nature of the federal reserve banks, the court recognized the "substantial federal government involvement through control by the Federal Reserve Board" and the fact that "the

-6-

federal reserve banks were clearly created for federal objectives." Id. at 754.

In apparent contrast, the Ninth Circuit also held that federal reserve banks are not federal instrumentalities for the purpose of the Federal Tort Claims Act. Lewis v. United States, 680 F.2d 1239 (9th Cir. 1982). The plaintiff in that case had been injured by a vehicle owned by the Federal Reserve Bank of San Francisco. The FTCA created liability for the negligent acts of employees of federal agencies, and the FTCA defined "agencies" to include "corporations acting primarily as instrumentalities of the United States." Id. at 1240, quoting 28 U.S.C. § 2671. The Lewis court distinguished Hollingshead, reasoning that while the "public official" test turned on whether there was substantial federal involvement in the employing entity, federal liability under the FTCA "is narrowly based on traditional agency principles and does not necessarily lie when the tortfeasor simply works for an entity, like the Reserve Banks, which perform important activities for the government." Lewis, 680 F.2d at 1242.

Although in each of the above cases the courts found that the federal reserve banks were instrumentalities of the government, it must be noted that those findings were made outside the context of ERISA. Whether the same finding should apply in this case depends on interpretation of ERISA itself. As in the foregoing cases, courts and agencies which have interpreted the meaning of "instrumentality" to decide whether various entities are covered by ERISA have also focused on the entity's purpose and the degree to

which the entity is connected with the state or federal government. To this end, defendant and plaintiff advocate the use of different tests for whether ERISA applies to an employee benefit plan.

Defendant urges the Court to apply the test used in <u>Rose v. Long Island Pension Plan</u>, 828 F.2d 910 (2d Cir. 1987). In <u>Rose</u>, the court had to decide whether a pension plan established by the Long Island Railroad was a governmental plan for purposes of Title I of ERISA. The court looked to a test used by the Internal Revenue service, explaining that "the Internal Revenue Service ... has had occasion to define 'agency or instrumentality' under 26 U.S.C. § 414(d). That section was added to the Internal Revenue Code by Title II of ERISA and defines those 'governmental plans' which are exempt from certain qualification requirements for favorable tax treatment." <u>Id</u>. at 917. The IRS's interpretation was relevant to the interpretation of "agency or instrumentality" in Title I of ERISA because the two sections use almost identical language to define governmental plans.[3]

To interpret the § 414(d) exemption, the IRS had consistently relied on a revenue ruling which listed six factors relevant to the

---

[3] Title II of ERISA states that: "For purposes of this part, the term 'governmental plan' means a plan established and maintained for its employees by the Government of the United States, by the government of any State or political subdivision thereof, or by any agency or instrumentality of any of the foregoing." 26 U.S.C. § 414(d).
Title I of ERISA states that: "The term 'governmental plan' means a plan established or maintained for its employees by the Government of the United States, by the government of any State or political subdivision thereof, or by any agency or instrumentality of any of the foregoing." 29 U.S.C. § 1002(32).

-8-

determination of whether an entity was an agency or instrumentality:

> In cases involving the status of an organization as an instrumentality of one or more states or political subdivisions, the following factors are taken into consideration: (1) whether it is used for a governmental purpose and performs a governmental function; (2) whether performance of its function is on behalf of one or more states or political subdivisions; (3) whether there are any private interests involved, or whether the states or political subdivisions involved have the powers and interests of an owner; (4) whether control and supervision of the organization is vested in public authority or authorities; (5) if express or implied statutory or other authority is necessary for the creation and/or use of such an instrumentality, and whether such authority exists; and (6) the degree of financial autonomy and the source of its operating expenses.

Rev. Rul. 57-128, 1957-1 C.B. 311. The Rose court applied the test from Rev. Rul. 57-128 and found that the Long Island Railroad was sufficiently connected with state government to be considered an instrumentality for the purposes of Title I of ERISA. Rose, 828 F.2d at 918.

Plaintiff relies on Alley v. Resolution Trust Corp., 984 F.2d 1201 (D.C. Cir. 1993), in which the court ruled that the Federal Asset Disposition Association (FADA) was not an instrumentality for the purposes of Title I of ERISA. Although the parties cited the Rose factors, the D.C. Circuit "[did] not find the *Rose* criteria the most helpful guide." Instead, the court focused on "what should be the core concern for ERISA purposes - the nature of an entity's relationship to and governance of its employees." Id. at 1206 n.11. The court found that ERISA's legislative history evinced Congress's intention to exempt governmental employee

benefit schemes from coverage.  The court, however, found "no indication that Congress meant the governmental plan exemption to reach an entity that relates to its employees as would a private business - an entity whose employees are not subject to laws governing public employees generally." Id. at 1206.  Acknowledging that FADA was operated "under federal agency (FSLIC) auspices" and that it had "an undeniable public coloration," Id. at 1202, 1205, the court queried whether FADA functioned like a governmental organization or a private enterprise in its relationships with its employees.  This inquiry led the court to conclude that FADA "personnel far more closely resembled private sector employees than they did government workers." Id. at 1206.  Thus, the court held that FADA's employee benefit plains were not exempt from ERISA. Id. at 1207.

Plaintiff argues that the analysis used by the court in the Alley case should produce the same conclusion here.  She emphasizes that the employees of the federal reserve banks do not participate in the Federal Employee Retirement System, nor do they have the protections afforded by the civil service system.[4]  The Court believes that because of significant distinguishing factors, Alley does not command the same conclusion.

The Alley court focused on the employment relationship between FADA and its employees only after acknowledging that FADA was

---

[4] In fact, the Federal reserve banks have a statutory right to terminate employees at will.  See 12 U.S.C. § 341 Fifth; see also Mele v. Federal Reserve Bank of New York, 359 F.3d 251, 255 (3d Cir. 2004).

ambiguously located on a spectrum of entities, ranging from obviously public to obviously private. See Alley, 984 F.2d at 1205, 1206 n.11 ("[C]ertain of FADA's features would not be found in a Standard Field Guide to Governmental Entities .... [O]ne could argue long and hard about FADA's score under the *Rose* test.").[5] The court considered the issue without the benefit of other judicial or administrative decisions clearly identifying FADA as an instrumentality. Thus, the court looked beyond the plain language of the statute only after the acknowledging the difficulty in determining whether FADA was clearly an instrumentality under 29 U.S.C. § 1002(32). There is no such ambiguity with respect to the federal reserve bank.

FADA was established by a federal agency, the Federal Home Loan Bank Board, to "bring private-sector efficiency to FSLIC's efforts to dispose of the assets of failed savings and loan institutions." Alley, 984 F.2d at 1202. In contrast, the federal reserve banks were established by Congress for the purpose of helping to regulate the nation's monetary system, and they are subject to the oversight of a Presidentially-appointed Board of Governors. See Federal Reserve Act, 12 U.S.C. § 221 *et seq*. Although the stock of the federal reserve banks is held by private banks, those member banks "lack the powers and rights customarily

---

[5] Indeed, one of the factors mentioned by the court as weighing heavily towards characterizing FADA as a private entity was that it had to pay federal and state taxes, taxes from which the federal reserve banks are exempt. See Alley, 984 F.2d at 1205; 12 U.S.C. §531.

-11-

vested in shareholders of a private corporation." Federal Reserve Bank of Boston v. Comm'r of Corporations and Taxation, 499 F.2d 60, 62 (1st Cir. 1974). The banks are not funded directly by Congress, but any income generated by the banks' activities (above a statutory six percent return to the shareholders) is paid into a surplus fund, and annually returned to the federal Treasury. Id. at 63; see also 12 U.S.C. § 289(a). By a preponderance of authority, including Eighth Circuit case law and interpretations by the Internal Revenue Service, the federal reserve bank has been classified as an instrumentality. See Federal Reserve Bank of St. Louis v. Metrocentre Improvement District, 657 F.3d 183, 186 (8th Cir. 1981); Federal Reserve Bank of Boston, 499 F.2d 60, 62; U.S. v. Hollingshead, 672 F.2d 751, 753 (9th Cir. 1982).

Furthermore, following Alley in this instance would mean that the federal reserve banks are instrumentalities under ERISA for purposes of Title II, but not for purposes of Title I. Shortly after ERISA was enacted, the IRS was asked by the Board of Governors to decide whether the Federal Reserve System's plans were exempt from ERISA coverage.[6] The IRS considered whether the plans were "governmental plans" and concluded that "[t]he Federal Reserve System is an instrumentality of the United States for the purposes

---

[6] Originally, the Board had requested a joint opinion from the Department of Labor regarding the application of Title I to the employee benefit plans, but in the interests of an expedited ruling, the Board later asked the IRS to restrict the ruling to Title II of ERISA.

of § 414(d) of the Code," and the plans were therefore exempt. See Def.'s Mot. to Dismiss, Ex. J, p. 2.

The Rose test and its reliance on Revenue Ruling 57-128 appropriately reflect the factors considered by other courts when analyzing the degree of connection between the federal government and the purported instrumentality. Applying the factors in the Revenue Ruling cited in Rose, it is clear that (1) the federal reserve banks perform the important governmental function of furthering national fiscal policy, (2) the banks perform their functions on behalf of the federal government; (3) the private interests that are involved do not have the typical interests of an owner; (4) control and supervision of the federal reserve banks is vested in a Board of Governors appointed by the President with the advice and consent of the Senate; (5) express statutory authority created the Federal Reserve System, including the Board of Governors and the twelve member banks; and (6) although the federal reserve banks have a degree of financial autonomy, the United States Treasury is the beneficiary of excess revenue and any assets remaining after payment of debts in the event of dissolution. 12 U.S.C. § 290.

Plaintiff also argues that the IRS has issued a more pertinent list of factors by which to classify an entity as an instrumentality in Revenue Ruling 89-49, 1989-1 C.B. 117. The factors listed are similar to the factors in Rev. Rul. 57-128, with the exceptions that Rev. Rul. 89-49 focuses on the degree of everyday control that the governmental unit has over the entity in

-13-

question and considers whether the employees of the entity are treated as government employees.[7]

Rev. Rul. 89-49 discussed whether a volunteer fire company, established jointly by several municipalities, was an agency or instrumentality of a state for the purposes of the § 414(d) exemption. The IRS found that the municipalities exerted only minimal control over the fire company, the trustees who ran the company were elected by the volunteers, the expenses were partially paid for by community donations, and the employees were not considered to be state employees. Considered cumulatively, these factors meant that the volunteer fire department was not an agency or instrumentality of the state. However, the IRS also cautioned that "[a]lthough all of the above factors are considered in determining whether an organization is an agency of a government, the mere satisfaction of one or all of the factors is not necessarily determinative." Rev. Rul. 89-49, 1989-1 C.B. 117. The test offered here may be relevant, but it provides no more bright line guidance than does the test endorsed by Rose.

Even if the test in Revenue Ruling 89-49 were applied here, the federal reserve banks would be deemed instrumentalities. The IRS stated that "[o]ne of the most important factors to be considered ... is the degree of control that the federal or state government has over the organization's everyday operations." Rev.

---

[7] Plaintiff has not pointed to any authority discussing the utility of Rev. Rul. 89-49 in an analysis of instrumentalities generally or in the context of Title I of ERISA.

-14-

Rul. 89-49, 1989-1 C.B. 117. Although the federal reserve banks are independently managed corporations, they are all subject to the oversight of the Board of Governors. The Board has the power to "suspend or remove any officer or director of any Federal reserve bank" and to "suspend ... the operations of any Federal reserve bank, to take possession thereof, administer the same during the period of suspension." 12 U.S.C. § 248 (f), (h). The Board must also conduct an annual audit of each Reserve Bank. 12 U.S.C. § 248(b). There is little similarity between the banks and the subject of Revenue Ruling 89-49, a volunteer fire company established under the state's nonprofit corporation statute and subject to the exclusive control of the board of trustees elected by the volunteer firefighters.

The first factor in Rev. Rul. 89-49 asks whether the organization was established by specific legislation. Specific legislation was a factor regarding the federal entity at issue in <u>Alley</u>, as well: there, FADA was created by an agency, and not directly by Congress. See <u>Alley</u>, 984 F.2d at n.2. The presence of specific legislation creating the entity indicates that a legislature established the entity to further an identified policy, thus supporting the inference that the entity is an instrumentality. See <u>First National City Bank v. Banco Para El Comercio Exterior de Cuba</u>, 462 U.S. 611, 624 (1983). The federal reserve banks, of course, were created directly by Congress. The attenuated connection that seems to be problematic in <u>Alley</u> and in Rev. Rul. 89-49 is absent.

Revenue Ruling 89-49, like Alley, considers whether employees of the entity are treated as employees of the government. Plaintiff's argument advocates this factor as the dispositive inquiry, but the Court cannot agree. Congress did not define "governmental plan" by reference to the status of employees; it simply stated that a plan established by "any agency or instrumentality" of "the Government of the United States" was a governmental plan and thus exempt.

Independence from the civil service system and other direct government oversight does not necessarily imply that the entity is not an instrumentality. See, e.g., Federal Reserve Bank of Boston v. Commissioner of Corporations and Taxation of the Commonwealth of Massachusetts, 499 F.2d 60, 63-64 (1st Cir. 1974) ("It would seem that Congress intended all components of the Federal Reserve System, including the banks, to act in many respects outside the executive chain of command, although their greater independence in no way signals a diminished role in the operations of government."). Thus, while the status of employees may be a consideration in the absence of other indicia of legislative intent, it does not control here. Consequently, analysis of the factors in Rev. Rul. 89-49 compels the conclusion that the federal reserve bank is an instrumentality.

Plaintiff tries to draw support from decisions holding that the federal reserve bank is not an agency. This argument would be relevant only if one reads the phrase "agency or instrumentality" should as a single term, without regard to the disjunctive "or"

that separates the two words. Such a reading would render "instrumentality" mere surplusage, and would go against the clear weight of precedent. See First National City Bank, 462 U.S. 611 (viewing agencies and instrumentalities as governmental entities with distinct purposes); see also Scott v. Federal Reserve Bank of Kansas City 406 F.3d 532, 535 (8th Cir. 2005) ("it is possible to be a fiscal agent or instrumentality of the government without being a federal agency").

Plaintiff also makes the point that the plans at issue are actually established and maintained by the Federal Reserve System, which consists of both the Board and the federal reserve banks, and not by the banks themselves. In contrast to the employees of the banks, some Board employees are eligible to participate in the Federal Employee Retirement System, and can transfer their service credits to other agencies if they leave the Board. See Pl.'s Mem. in Opp. at 19. However, the banks are still subject to the foregoing analysis for classification as instrumentalities. The fact that there are some employees of the Federal Reserve System who are clearly government employees in a direct sense does not necessitate the conclusion that the remainder of the employees are employed by a private entity. The status of the banks as instrumentalities is not diminished by the more "agency-like" character of the Board of Governors.

For the reasons discussed above, the Court concludes that the defendant is an instrumentality of the federal government, and, hence, its employee benefit plans are government plans which are

-17-

exempt from coverage under ERISA. Therefore, the Court lacks subject matter jurisdiction of plaintiff's ERISA claim in Count II of the complaint.

Accordingly,

**IT IS HEREBY ORDERED** that defendant's motion [#40] to dismiss Count II of plaintiff's complaint is **granted.**

**IT IS FURTHER ORDERED** that the claim in Count II is **dismissed for lack of subject matter jurisdiction.**

_____
CAROL E. JACKSON
UNITED STATES DISTRICT JUDGE

Dated this 20th day of December, 2005.