UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

BERNARDINE BERINI,                    )
                                      )
            Plaintiff,                )
                                      )
      vs.                             )        No. 4:04-CV-1379 CEJ
                                      )
FEDERAL RESERVE BANK OF               )
ST. LOUIS, EIGHTH DISTRICT,           )
                                      )
            Defendant.                )

## MEMORANDUM AND ORDER

This matter is before the Court on the motion of defendant
Federal Reserve Bank of St. Louis for summary judgment, pursuant to
Rule 56 of the Federal Rules of Civil Procedure. Plaintiff has
filed a memorandum in opposition, and the matter is fully briefed.

### I. Background

Plaintiff joined the Federal Reserve Bank of St. Louis in
1969. During her tenure with the bank, plaintiff moved from check
processing services into an audit position, and in 1999 she
assisted the management of the bank with a series of measures
designed to make the bank's operations auditable. In late 1999,
plaintiff moved into the Control Unit, a new area within the
Financial Management Department. Plaintiff learned and performed
new tasks associated with her position, but by 2002, her managers
were concerned about deficiencies in her analytical skills and the
number of detail errors she made. Her year-end performance review
in 2003 reflected a rating of "unacceptable" and warned plaintiff
that if she did not improve, "further action [would] be required."
On February 18, 2004, plaintiff received a personnel notice stating

that she had not remedied the problems identified in the year-end performance review. On April 1, 2004, managers Holly Harris-England and Cheryl O'Brien informed plaintiff that she was terminated. Plaintiff asked for and was given the option to retire instead. She was 53 years old when she left the bank.

Plaintiff filed suit, asserting claims under the Age Discrimination in Employment Act and § 510 of the Employee Retirement Income Security Act. An earlier motion to dismiss the ERISA claim was granted, and defendant now moves for summary judgment on the remaining ADEA claim.

## II. Discussion

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment shall be entered "if the pleadings, deposi-tions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." In ruling on a motion for summary judgment the court is required to view the facts in the light most favorable to the non-moving party and must give that party the benefit of all reasonable inferences to be drawn from the underly-ing facts. AgriStor Leasing v. Farrow, 826 F.2d 732, 734 (8th Cir. 1987). The moving party bears the burden of showing both the absence of a genuine issue of material fact and its entitlement to judgment as a matter of law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986); Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986); Fed. R. Civ. P. 56(c). Once

the moving party has met its burden, the non-moving party may not rest on the allegations of his pleadings but must set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists. Fed. R. Civ. P. 56(e). Rule 56(c) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." <u>Celotex Corporation v. Catrett</u>, 477 U.S. 317, 322 (1986).

To survive an employer's motion for summary judgment, an individual claiming age discrimination must present direct evidence of discrimination or create an inference of unlawful discrimination under the familiar <u>McDonnell Douglas</u> burden-shifting formula[1]. <u>See Lee v. Rheem Manufacturing Co.</u>, 2005 WL 3534011, at *3 (8th Cir., Dec. 28, 2005). Plaintiff must make a prima facie case of age discrimination by showing that (1) she is a member of the protected age group, (2) she was performing her job at a level that met her employer's legitimate expectations, (3) she was discharged, and (4) she was replaced by a younger worker. <u>Hitt v. Harsco Corp.</u>, 356 F.3d 920, 924 (8th Cir. 2004); <u>Ziegler v. Beverly Enterprises-Minnesota, Inc.</u>, 133 F.3d 671, 675 (8th Cir. 1998). If plaintiff makes the requisite showing, then the employer must produce evidence of a legitimate, non-discriminatory reason for the adverse

---

[1] <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973).

employment action.  <u>Hitt</u>, 356 F.3d at 924; <u>Reeves v. Sanderson Plumbing Prod., Inc.</u>, 530 U.S. 133 (2000).  If the employer is able to do so, the plaintiff must then "'prove by a preponderance of evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination.'" <u>Id.</u> at 143, <u>quoting</u> <u>Texas Dept. of Community Affairs v. Burdine</u>, 450 U.S. 248, 253 (1981).  At all times the burden of persuasion rests with the plaintiff.  <u>Haas v. Kelly Services, Inc.</u>, 409 F.3d 1030, 1036 (8th Cir. 2005).

The Court finds that the plaintiff has satisfied the first, third and fourth elements of her prima facie case.  The bank argues that the plaintiff cannot establish that her performance met the bank's legitimate expectations at the time of her discharge, and as proof, offers two years of performance reviews reflecting that plaintiff's managers found her performance deficient and that she failed to make the necessary improvements.  In response, plaintiff does not contest the existence of the errors described in the reviews, but instead denies the legitimacy of the bank's criticisms.

Between 1999 and 2004, the accounting area in the Financial Management Department was undergoing a transition from a primarily clerical department to one that placed increased reliance on the analytical skills of its employees to provide management with information about data trends.  The changes were intended to move the department more in line with industry standards.  Several of these changes were also mandated by the Board of Governors of the

Federal Reserve System, in order to support a more accurate picture of how bank services were billed out to clients.

In 1999, plaintiff joined the Financial Management Department as part of the Control Unit. At that time, the primary purpose of the Control Unit was to perform a retrospective analysis of transactions entered into a new computer system that was found to have created out-of-balance conditions in the bank's general ledger.

During 2000, plaintiff's responsibilities included a review of these transactions in order to determine where mistakes had been made. She also completed data security reviews and began learning about a new methodology implemented by the Federal Reserve Board of Governors in 1999, called AIDE.[2] At the end of the year, plaintiff received a summary review rating of "strong,"[3] and she was recommended for promotion to grade level 13 by her immediate supervisor, Holly Harris-England. Ms. Harris-England's suggestions for improvements included comments on the tone of plaintiff's written communications, and a caution that she "sometimes focuses too narrowly on the details and does not fully consider the broader impact of each action she recommends." Def.'s Mot. for Summ. J., Ex. D at 5. Despite the promotion recommendation, Ms. Harris-England was later told by the vice-president in charge of the

---

[2] AIDE stands for "Accountability, Integrity, Decision-making, and Efficiency."

[3] The possible ratings ranged from a low "unacceptable" through "needs improvement," "competent," "strong," and "role model."

Financial Management Department, Marilyn Corona, that plaintiff had not demonstrated the ability to perform at grade level 13, and thus was not eligible for promotion.[4]

In 2001, a substantial portion of plaintiff's work involved the interpretation of guidelines for the Federal Reserve's Planning and Control System (PACS). PACS was the method by which the Federal Reserve System ensured that it had accurate information about the services it provided to clients, and was based on the time and costs incurred by departments that provided support services. The new AIDE methodology required that employees create Department Distribution Tables ("DDT's") which reflected the amount of time that each department spent in support of the various activities described in the PACS manual.

Plaintiff's responsibilities during 2001 also involved a system called GEARS, which documented information about the cost of services provided to the United States Government. Plaintiff's unit was responsible for identifying any variances between actual and budgeted expenses, and writing explanations for those variances.

Plaintiff's immediate supervisor in 2001 was Scott Trilling, who gave her a summary evaluation of "competent" at the end of the

_____

[4] Plaintiff mentions Ms. Corona's refusal to promote her as evidence of discrimination, but she has not claimed it as a separately actionable adverse employment decision. Even if she had specifically done so, it does not appear from the record that this failure to promote claim has been administratively exhausted before being raised here, and so the Court will consider plaintiff's termination as the only relevant adverse action.

year.  Communication was again noted as an area for improvement, as well as "improving upon her adaptability to any organizational change."  Def.'s Mot. for Summ. J., Ex. E at 33.

During 2002, plaintiff continued to have responsibility for data security, GEARS, and the support tables associated with AIDE; towards the end of the year, she was assigned to work on PACS compliance and input vendor information into a computer system. She was also assigned the task of writing descriptions of the procedures that other departments could use to help them comply with the accounting procedures required by PACS.  Defendant argues that plaintiff's job performance began to decline in 2002 as she struggled to become proficient in the analysis required by the new accounting methodologies.

Throughout the year during status reviews and in the year-end performance reviews, plaintiff's managers documented deficiencies in her job performance.  Among the deficiencies was that plaintiff's written work contained a number of errors.  These included spelling and grammatical mistakes as well as a more substantive failure to comply with her manager's objectives for an expenditure training presentation.  In an evaluation dated December 12, 2002, Ms. Harris-England wrote:  "Bernie's attention to detail in her written assignments of sizable length, such as procedures, has been severely lacking. . . . [They] required multiple, in-depth reviews and revisions by management before the documents were considered acceptable."  Def.'s Mot. for Summ. J., Ex. F at 34.

These detail errors were not confined to written reports. A spreadsheet completed by plaintiff was sent to several governmental agencies, but had to be resubmitted because of the inclusion of cost data in the wrong columns. Even though the worksheet was revised and resubmitted, "the errors gave an impression of a lack of professionalism and care." Def.'s Mot. for Summ. J., Ex. F at 36.

Ms. Harris-England expressed a second, more substantive, concern in her 2002 year-end performance review of plaintiff:

> Bernie's job knowledge appears to deteriorate in the areas of cost analysis and the application of PACS methodologies in analytical contexts. . . . [Her] detail mindedness, while a positive trait, can become detrimental if the analyst gets mired down in the details and loses the ability to define what the details explain at a broader level. . . . The ability of an analyst to perform complex, unique analysis of data is critical to the success of Expense Oversight.

Def.'s Mot. for Summ. J., Ex. F, at 30. These complex analyses required by the department during the latter part of 2002 necessitated close attention to the changing PACS guidelines established by the Board, for which there were no explicit step-by-step instructions for implementing.

Finally, with regard to plaintiff's responsibility for GEARS during 2002, plaintiff demonstrated additional difficulty with analytical tasks: "Once the GEARS spreadsheets are completed, analysts must identify any variances and explain the cause of the variances appropriately to management and various government agencies. . . . [Plaintiff] appears to have difficulty in performing more broad-based data analysis such as why an activity

experiences significant shifts in costs from month-to-month."
Def.'s Mot. for Summ. J., Ex. F at 37. Although plaintiff had
successfully worked with PACS accounts before, Ms. Harris-England
noted that plaintiff did not seem to be able to apply that
knowledge in a different, more analytic, context.

Plaintiff's performance review culminated in a rating of
"needs improvement," and cautioned that plaintiff must immediately
show improvement in her analytical skills and a reduction in the
errors in her written work.

In 2003, plaintiff's performance continued to attract the
criticism of her managers. Although she decreased the number of
spelling and grammatical errors in her written work, she continued
to overlook mistakes on her spreadsheets. In a mid-year status
review, plaintiff was again warned that her analytical skills had
not improved to the expected level because she was still unable to
independently and adequately review department distribution tables
and continued to have trouble completing variance explanations for
the department's budget code. These concerns were still evident on
the year-end review, and plaintiff received a summary rating of
"unacceptable." She was warned that "improvement should be
achieved and maintained by 3/31/04 or further action may be
required." Def.'s Mot. for Summ. J., Ex. I at 9.

Defendant argues that in light of these reviews, the plaintiff
cannot demonstrate that her performance was adequate. In part,
Berini argues that she did meet the performance expectations of her
employer. She points to the fact that she was given a retention

incentive for the period between August of 1999 and January 1, 2001, and monetary awards through the "Performance Plus" program, including one in December 2003. She also emphasizes her long tenure at the bank and the positive evaluations, promotions and raises that she received during the majority of that time. However, in evaluating whether an employee's job performance is satisfactory, the relevant inquiry is whether the employee was meeting expectations at the time of termination. See Miller v. Citizens Security Group, Inc., 116 F.3d 343, 346 (8th Cir. 1997). The performance reviews received by the plaintiff during her final three years at the bank show that the plaintiff's managers felt that she was making an unacceptable number of errors, that she had not managed to learn the skills required by the new accounting methodologies, and that she was made aware of these shortcomings.

The retention agreement between the bank and plaintiff does not constitute a contradiction. The evidence shows that the bank wanted to retain plaintiff's experience during a period of transition for the bank when such continuity would be beneficial. The agreement terminated before management began to document plaintiff's performance problems, and does not reflect any evaluation of plaintiff's performance in the tasks she was assigned during 2002 and 2003. In any event, the agreement is too far removed from the termination to be relevant in assessing plaintiff's job performance. See Miller, 116 F.3d at 346 (deciding that an evaluation that occurred fifteen months prior to the plaintiff's termination was too remote to be relevant).

Isolated non-review feedback, such as the $300 Performance Plus award received by plaintiff in December of 2003, does not indicate that her overall job performance was satisfactory. The Performance Plus program was a pool of money available to managers to reward completion of certain tasks. Ms. Harris-England testified that plaintiff received the award "because we had to do . . . a lot of additional work which required us to spend additional time that normally would not have been done in a good situation." Harris-England Dep. at 64. There is no evidence that the award reflected a positive assessment of plaintiff's competencies at the time; on the contrary, the plaintiff had been given a roughly contemporaneous performance review highlighting a number of performance problem areas.

Plaintiff does not dispute that she made daily errors which were brought to her attention by the plaintiff's manager. In response to the characterization of her performance as inadequate, the plaintiff attacks the legitimacy of her managers' criteria. She argues that (1) she was subject to excessive scrutiny, (2) her mistakes caused no financial damage to the bank, either because they were inconsequential or were caught and corrected by her managers before they had effect, (3) she had an excessive workload, and (4) she was not given adequate training.

Plaintiff offers no evidence that she was subject to more scrutiny than any other employee, beyond noting that she did not see her manager publicly discuss mistakes with other employees as often as she felt was done with her. Plaintiff's second contention

seems to suggest financial impact as the only legitimate job performance criterion. Even aside from the fact that "[f]ederal courts do not sit as a super-personnel department that reexamines an entity's business decisions," Harvey v. Anheuser-Busch, Inc., 38 F.3d 968, 973 (8th Cir. 1994) (citations and internal quotations omitted), it is entirely reasonable that plaintiff's work should be competent, whether or not her mistakes had a direct impact on the bank's finances. Additionally, the bank's management has the right to define the requirements of the job. See Cramer v. McDonnell Douglas Corp., 120 F.3d 874 (8th Cir. 1997), citing Hutson v. McDonnell Douglas Corp., 63 F.3d 771, 780 (8th Cir. 1995) ("The fact that [the employer] chose to place special emphasis on certain areas of job performance does not constitute grounds for challenging the evaluation as discriminatory."). Third, although plaintiff claims that the absence of a co-worker resulted in an excessive workload for her, plaintiff's performance did not improve when the co-worker returned, well before the plaintiff was terminated. Finally, plaintiff does not show that any other similarly-situated employee was given more or different training.

The Court is skeptical that the plaintiff has carried her burden of establishing a prima facie case here, because she fails to present any evidence that would create an issue of material fact as to her competency. The defendant is entitled to value certain skills more than others, and plaintiff had adequate notice of the evolving expectations for the increasingly analytical position she held. There is no evidence that the bank changed the parameters of

plaintiff's job illegitimately; on the contrary, there is uncontroverted testimony that modern accounting practices demanded a more professional staff and the bank was keeping pace with that trend. Plaintiff failed to master the skills required by the position that she held - skills which other employees were able to demonstrate in a shorter period of time.

Assuming, *arguendo*, that plaintiff has established a prima facie case of age discrimination, the analysis proceeds to the remaining stages of the McDonnell Douglas test. As demonstrated above, the bank has offered a legitimate, non-discriminatory explanation for plaintiff's termination by showing that her job performance was inadequate. The plaintiff now has the burden of showing that the reason articulated by the defendant is mere pretext for age discrimination. Stuart v. General Motors Corp., 217 F.3d 621, 634 (8th Cir. 2000).

Plaintiff's attempt at demonstrating pretext relies on the same arguments she makes in trying to show that the bank's expectations were illegitimate. Critically absent from her argument, however, is any connection between her age and her termination. Her main complaint is that other people in the bank (specifically, her managers) were responsible for more serious mistakes, yet were not terminated. However, plaintiff has not presented any evidence that these people were either similarly-situated to her or treated more favorably because of their age. EEOC v. Kohler Co., 535 F.3d 766 (8th Cir. 2003) ("Specifically, the individuals used for comparison must have dealt with the same

supervisor, have been subject to the same standards, and engaged in the same conduct without any mitigating or distinguishing circumstances."). As such, plaintiff's contentions are not adequate to show pretext. See Stuart, 217 F.3d at 634 (plaintiff must show that discrimination was the real reason for the adverse employment action).

Plaintiff next attempts to demonstrate that these performance reviews were pretextual by showing that her managers harbored biases against older employees. The sum total of her evidence of bias boils down to this: "A comment about her adjusting to change in a performance review was age stereotypical; the comment of her Manager that 'it's hell to get old'; her Manager's statement, 'Why don't you just retire?' are all evidence of age discrimination." Pl.'s Mot. in Opp. to Summ. J. at 20. The Court disagrees. Isolated inquires into plaintiff's retirement plans which do not rise to the level of harassment are not evidence of age discrimination. See, e.g., Montgomery v. John Deere, 169 F.3d 556 (8th Cir. 1999) (an employer may make reasonable inquires into the retirement plans of its employees). Nor is a single comment about growing older, made in response to plaintiff's own complaints about her physical condition, evidence of age discrimination. Plaintiff states that it reveals the speaker's "age consciousness," but what it does not do is reveal any discriminatory motive. Thomure v. Phillips Furniture Co., 30 F.3d 1020, 1024-25 (8th Cir. 1994); Zhuang v. Datacard Corp., 414 F.3d 849, 855 (8th Cir. 2005) (stray

comments about age are not enough to prove intentional discrimination).

Furthermore, plaintiff asserts that the "subjective" evaluations by her manager were based on age stereotyping, and thus evidence of a prohibited motive. She points to a single instance where Ms. Harris-England stated that plaintiff's analytical skills had deteriorated[5], and argues that this demonstrates a belief that "older individuals tend to lose their powers of raciocination [sic]." Where the word "deteriorates" appears in plaintiff's reviews, the context does not bear the significant weight that plaintiff wishes to place upon it.

Plaintiff also argues that her employer has offered contradictory or inconsistent explanations for its decision to terminate her employment, which would allow an inference of pretext. She claims that a comment made at her termination, to the effect that she was "not a good fit" is at odds with the reason ultimately given for her termination. Also, she points to the fact that she was praised for being "detail-oriented" in some performance reviews, while that skill was deemed lacking in later reviews.

Plaintiff relies on Kim v. Nash Finch Co., 123 F.3d 1046 (8th Cir. 1997) and Young v. Warner-Jenkinson Co., Inc., 152 F.3d 1018, 1021 (8th Cir. 1998). These cases involved defendants who stated

_____

[5] The actual quote, from the 2002 year-end performance review, is "Bernie's job knowledge appears to deteriorate in the areas of cost analysis and the application of PACS methodologies in analytical contexts." Def.'s Mot. for Summ. J., Ex. F at 30.

one reason for an adverse action at the time of that action, but claimed different justifications later, during litigation. As the holdings in those cases demonstrate, such behavior can support an inference of pretext. However, in this case the bank has consistently maintained that the plaintiff was dismissed for poor job performance. Minor differences in the phrasing of the explanations does not compel the conclusion that the employer's explanation was pretextual. As for the supposed inconsistencies within plaintiff's evaluations, the evidence clearly shows legitimate criticisms of plaintiff's performance on varied tasks. Plaintiff does not dispute that she understood the negative and positive comments about her performance at the time of the reviews.

In sum, there is absolutely no evidence of any age-based discriminatory motive on the part of plaintiff's employers. Consequently, the Court concludes that the plaintiff has failed to meet her burden of establishing that the defendant's stated reason for her termination was pretextual.

Accordingly,

**IT IS HEREBY ORDERED** that the defendant's motion for summary judgment [#51] is **granted**.

**IT IS FURTHER ORDERED** that all other pending motions are **denied as moot**.

_____
CAROL E. JACKSON
UNITED STATES DISTRICT JUDGE


Dated this 19th day of January, 2006.